UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN H. SANTOS, | CASE NO. C16-0434RSM |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION TO STAY AND STRIKING DEFENDANT U.S. BANK NATIONAL'S MOTION TO COMPEL |
| U.S. BANK NATIONAL ASSOCIATION, *et al.*, | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the Court on Defendant U.S. Bank National Association's ("U.S. Bank") Motion to Compel Discovery (Dkt. #16) and Plaintiff's Motion for Stay of Proceedings (Dkt. #24). The Court has reviewed both motions and their attendant briefing. For the reasons set forth herein, the Court now GRANTS Plaintiff's motion, stays this matter, and STRIKES Defendant's motion to compel subject to its renewal upon expiration of the stay.

## II.   BACKGROUND

Plaintiff, Brian Santos, initially filed his Complaint for Damages in King County Superior Court. Dkt. #4. Defendants removed the action to this Court on March 25, 2016. Dkt. #1. Plaintiff alleges that:

> 3.2    At all times material and relevant hereto [he] was an active duty member of the United States Air Force.

ORDER
PAGE - 1

3.3 At all times material and relevant hereto, [his] then-wife was also an active duty member of the United States Air Force.

3.4 Defendant US BANCORP, doing business as US Bank and US Bank Home Mortgage, holds the mortgage to [his] home located at 19007 SE 260th Street in Covington, King County, Washington.

3.5 On or about September 1, 2012, [he] spoke with Jordan Clark of Defendant US BANCORP, d/b/a US Bank, regarding his active duty status to ensure his home would be protected while he was deployed.

3.6 On said occasion, Jordan Clark assured [him] that he was protected under the Servicemembers Civil Relief Act (SCRA) and no negative action would be taken against him by the bank for any missed mortgage payments.

3.7 On or about September 11, 2012, Jill Payne, E-mail Representative of the Special Loans Department of Defendant US BANCORP emailed [him] and advised him that the SCRA did apply to his mortgage on the subject property and should he become delinquent on his mortgage payments, the bank could not take action against him.

3.8 On or about September 16, 2012, [he] responded to Jill Payne's email seeking further confirmation that he was fully enrolled in the program ensuring his protection under the SCRA and advised Ms. Payne that Jordan Clark had previously assured him that US BANCORP, d/b/a US Bank, would fully exonerate him for any missed mortgage payments and asked Ms. Payne for confirmation this statement by Jordan Clark was indeed true.

3.9 On or about September 17, 2012, Jill Payne responded to [his] email and confirmed his accounts with US Bank were "set up in accordance with the Servicemembers Civil Relief Act through [his] September 1, 2014, payment." She went on to state, ". . . you will not accrue any late charges through this date and we will not report you to the credit bureaus through November 28, 2013." Ms. Payne further confirmed that "[d]uring [his] period of active duty and for nine months thereafter, [he would] not be in danger of foreclosure..." and advised him that "[a]s of today, neither loan is being reviewed for foreclosure, so ... [he was] not going to lose [his] home."

3.10 On or about November 27, 2012, Defendant US BANCORP, by and through Jessica Brazier, Special Loans Specials with US Bank's Special Loans Department, sent [him] a letter again confirming his protection under the SCRA based upon his active duty status in the US military.

3.11 Defendant US BANCORP employed Defendant SAFEGUARD PROPERTIES to winterize Plaintiff's Covington home and, upon

ORDER
PAGE - 2

information and belief, hired Defendant SAFEGUARD PROPERTIES to perform this work less than one month after Plaintiff had received the written confirmation of November 27, 2012, that he was subject to SCRA protections.

3.12    Upon information and belief, when Defendant US BANCORP hired Defendant SAFEGUARD PROPERTIES to winterize Plaintiff's home, Defendant US BANCORP, by and through its duly authorized agents or employees, informed Defendant SAFEGUARD PROPERTIES that Plaintiff's mortgage was in default and that the subject residence was an asset of the bank and therefore needed winterization to preserve said asset.

3.13    Defendant SAFEGUARD PROPERTIES then hired Defendant QUEST PRESERVATION to perform said winterization.

3.14    Defendant QUEST PRESERVATION hired Bryan Anderson to complete the winterization of Plaintiff's home in Covington, Washington.

3.15    On or about December 28, 2012, Defendant QUEST PRESERVATION issued work order #115592 to Bryan Anderson to winterize the subject property.

3.16    On or about December 29, 2012, Bryan Anderson and his sister, Cheryl Anderson, entered Plaintiff's home.

3.17    On said occasion, Bryan Anderson replaced the front door locks with a new one so that Defendant SAFEGUARD PROPERTIES would have access to Plaintiff's home.

3.18    In the course of winterizing Plaintiff's home, Bryan and Cheryl Anderson unlawfully removed personal property belong to Plaintiff and also caused damage to the home itself.

3.19    Upon information and belief, over the course of four days, Bryan Anderson removed numerous items belonging to Plaintiff.

3.20    In the course of winterizing Plaintiff's home and removing Plaintiff's personal property from the residence, Bryan Anderson informed Plaintiff's neighbors that [his] mortgage was in default and was being repossessed by the bank.

3.21    Bryan Anderson then pawned and/or otherwise attempted to sell the personal property he stole from Plaintiff's residence.

3.22    On or about December 31, 2012, Jessica Brazier again sent a letter to Plaintiff advising him that the bank was issuing him a refund of a late fee due to his protection under the SCRA.

3.23    On or about January 4, 2013, Bryan Anderson opened a bank account with Defendant US BANCORP, via a US Bank branch, with a check he obtained from selling Plaintiff's personal property.

3.24    On or about February 24, 2013, Plaintiff [], having been granted a one-week leave from him [sic] deployment in Korea, arrived at the Covington home and discovered his key no longer worked to unlock the front door.  Unable to get into his home, Plaintiff called 911, who advised him to contact his bank.

3.25    Plaintiff [] contacted Defendant US BANCORP the next day, February 25, 2013, and notified said Defendant, by and through its duly authorized employee(s) and/or agent(s) of the violation of Defendant US BANCORP'S prior guarantees that he was protected by the SCRA and also providing notice to said Defendant that many personal items had been stolen from his residence.

3.26    Upon information and belief, his file and his corresponding claim for damages was transferred to Defendant US BANCORP'S Loss Draft Processing Center, a division of US Bank.

3.27    On or about February 28, 2013 and again on or about March 1, 2013, Plaintiff received emails from Defendant US BANCORP'S Loss Draft Processing Center, confirming receipt of his claim and advising Plaintiff it was currently being reviewed.

3.28    On or about March 2 or 3, 2013, Gregg Speer, Sr., Vice President of Residential Homes Default Counseling, a division of Defendant US BANCORP, called Plaintiff and promised him that the bank "would make this right" and further promised immediate financial assistance to Plaintiff to offset the costs and losses Plaintiff had suffered as a result of the wrongful pre-foreclosure actions taken by Defendant US BANCORP.

3.29    After having admitted the pre-foreclosure actions previously taken by Defendant US BANCORP were wrongful and should not have occurred, Defendant US BANCORP, by and through US Bank's Residential Mortgage Default and Management Division, sent Plaintiff another Pre-Foreclosure Notice on or about June 19, 2013.

3.30    Around the time Defendant US BANCORP sent Plaintiff the Pre-Foreclosure Notice in June of 2013, Plaintiff's neighbors contacted him

    to let him know that another home preservation company had been seen on Plaintiff's property.

Dkt. #4, *Complaint* at ¶ ¶ 3.2-3.30.

  As a result, Plaintiff has brought claims against Defendant U.S. Bank for Violation of the Consumer Protection Act and Fraud, and against all Defendants for Violation of the Servicemembers Civil Relief Act, Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and Vicarious Liability. *Id.* at ¶ ¶ 4.1-10.9.

  Discovery has been proceeding in this matter, and trial is currently set for May 30, 2017. Dkt. #11. Prior to the discovery deadline of February 1, 2017, Defendants filed a motion to compel responses to written discovery and the deposition of Plaintiff. Dkt. #16. That motion was noted for consideration by the Court on January 20, 2017. *Id.*

  Plaintiff has now filed a motion for a stay of this matter pursuant to the Servicemembers Civil Relief Act ("SCRA"), and seeks a stay until May of 2018. Dkt. #24.

### III. DISCUSSION

**A. Motion for Stay**

  The purpose of the SCRA "is to suspend enforcement of civil liabilities of persons in military service of the United States in order to enable such persons to devote their entire energy to the defense of the Nation." *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The public policy behind the Act "is to allow military personnel to fulfill their duties unhampered by obligations incurred prior to their call." *Omega Industries, Inc. v. Raffaele*, 894 F. Supp. 1425, 1434 (D. Nev. 1995). Further, the provisions of the Act are to be "liberally construed" and applied in a "broad spirit of gratitude towards service personnel." *Engstrom*, 47 F.3d at 1462; *Omega Industries, Inc.*, 894 F. Supp. at 1434 (citations omitted). As a result, the Court "must exercise extreme caution in withholding the protection"

ORDER
PAGE - 5

of the Act. *Omega Industries, Inc.*, 894 F. Supp. at 1434. Nevertheless, the Act "is not to be used as a sword against persons with legitimate claims," and the Court must give "equitable consideration of the rights of parties to the end that their respective interests may be properly conserved." *Engstrom*, 47 F.3d at 1462.

Section 522 of the SCRA "applies to any civil action in which the plaintiff or defendant at the time of filing" a request for a stay under that section: "(1) is in military service or is within 90 days after termination of or release from military service; and (2) has received notice of the action or proceeding." 50 App. U.S.C.A. § 522(a). There is no dispute that these requirements have been met in this case.

A stay may be obtained "[a]t any stage before final judgment in a civil action or proceeding" either "upon application of the servicemember" or by the Court "on its own motion . . . for a period of not less than 90 days." 50 App. U.S.C.A. § 522(b)(1). In order to obtain a stay, the application must include:

> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.
>
> (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

50 App. U.S.C.A. § 525(b).

In support if his motion for stay, Plaintiff has submitted a letter dated January 20, 2017, from his commanding officer which states that Plaintiff's current military assignment prevents him from "appearing for trial in the Continental United States for trial beginning 12 June 2016," that he does not have enough leave days accrued to participate "in these upcoming

ORDER
PAGE - 6

proceedings of 30 days or more," that he will separate from the Air Force in three years, and that he could provide a deposition in this proceeding in May of 2017. Dkt. #25, Ex. 1. In addition, he has submitted a copy of his orders stationing him in Germany, and his specific position appointment letter which states that he needs to be prepared for a potential deployment at any time. *Id.*, Exs. 2 and 3. Although the Court agrees with Defendant that there are ambiguities with the information provided, *see* Dkt. #26, and particularly with the letter from Plaintiff's commanding officer, in an abundance of caution the Court finds that Plaintiff has satisfied the requirements of the Act and will grant a stay.[1] However, given those ambiguities, the Court will not grant a stay until May of 2018, and will grant a stay for a shorter duration as noted below.

**B. Motion to Compel**

Defendant U.S. Bank has filed a motion to compel discovery, asking the Court to direct Plaintiff to provide complete and verified responses to its Interrogatories, complete disclosures responsive to its Requests for Production, and to appear for his deposition before the close of discovery. Dkt. #16. The Court has reviewed the briefing by the parties related to this motion. Given that the Court has now stayed this matter, the Court will STRIKE the motion to compel at this time. However, nothing in this Order precludes Defendant from renewing its motion once the stay is lifted, either by asking the Court to re-note the existing motion or by filing an amended motion addressing anything that may have changed since the time of filing the instant motion. The Court will consider Defendant's request for attorney's fees at that time as well.

---

[1] Indeed, to prevent prejudice against an absent party, courts may grant a stay even where a servicemember does not fully satisfy both conditions enumerated in section (b)(2) of the SCRA. *See, e.g., Keane v. McMullen*, 2009 U.S. Dist. LEXIS 10389, 2009 WL 331455, *3 (N.D. Cal. Feb. 11, 2009) (granting a stay where a servicemember did not produce a letter from his commanding officer regarding his leave status because the court was sufficiently convinced that a stay was necessary to avoid undue prejudice).

ORDER
PAGE - 7

In addition, the Court notes that the discovery deadline has now passed, with no party seeking an extension of such deadline. Therefore, once the case resumes, only those case deadlines that have not passed will be re-scheduled. Remaining deadlines include those for: dispositive motions, 39.1 mediation, Motions in Limine, the Pretrial Order, trial briefs and Proposed Findings of Fact and Conclusions of Law. Dkt. #11. With the exception of the discovery at issue in Defendant's motion, no further discovery shall be taken once the stay is lifted, unless otherwise ordered by the Court.

## IV.   CONCLUSION

Having reviewed Plaintiff's and Defendant's motions, the oppositions thereto and replies in support thereof, along with the parties' Declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Stay (Dkt. #24) is GRANTED. This litigation is STAYED until **August 18, 2017**. If, by that date, a subsequent application for additional stay is filed by Plaintiff under 50 App. U.S.C. § 522(d)(1), that application shall again contain the information required under 50 App. U.S.C. § 522(b)(2), including a letter or other communication from the servicemembers' commanding officer.

2. The current trial date and all remaining pre-trial deadline shall be removed from the Court's calendar. The Clerk will issue an Amended Scheduling Order once the stay is lifted in this matter.

3. Defendant U.S. Bank's Motion to Compel (Dkt. #16) is STRICKEN. However, nothing in this Order precludes Defendant from filing a subsequent motion to compel once the stay is lifted in this matter.

4. Once the stay is lifted, only those case deadlines that have not passed as of the date of this Order will be re-scheduled as noted above. With the exception of the discovery at issue in Defendant's motion to compel (Dkt #16), no further discovery shall be taken once the stay is lifted unless otherwise ordered by the Court.

DATED this 14 day of February, 2017.

                                       RICARDO S. MARTINEZ
                                       CHIEF UNITED STATES DISTRICT JUDGE