UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRIAN H. SANTOS, | CASE NO. C16-0434RSM |
| Plaintiff, | ORDER GRANTING IN PART PLAINTIFF'S MOTION TO STAY |
| v. | |
| U.S. BANK NATIONAL ASSOCIATION, *et al.*, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's second Motion for Stay of Proceedings pursuant to the Servicemembers Civil Relief Act ("SCRA"). Dkt. #32. The Court has reviewed the motion, the opposition thereto, the reply in support thereof, and the attendant Declarations and Exhibits. For the reasons set forth herein, the Court now GRANTS IN PART Plaintiff's motion.

## II. BACKGROUND

Plaintiff, Brian Santos, initially filed his Complaint for Damages in King County Superior Court. Dkt. #4. Defendants removed the action to this Court on March 25, 2016. Dkt. #1. Plaintiff alleges that:

> 3.2  At all times material and relevant hereto [he] was an active duty member of the United States Air Force.

ORDER
PAGE - 1

3.3     At all times material and relevant hereto, [his] then-wife was also an active duty member of the United States Air Force.

3.4     Defendant US BANCORP, doing business as US Bank and US Bank Home Mortgage, holds the mortgage to [his] home located at 19007 SE 260th Street in Covington, King County, Washington.

3.5     On or about September 1, 2012, [he] spoke with Jordan Clark of Defendant US BANCORP, d/b/a US Bank, regarding his active duty status to ensure his home would be protected while he was deployed.

3.6     On said occasion, Jordan Clark assured [him] that he was protected under the Servicemembers Civil Relief Act (SCRA) and no negative action would be taken against him by the bank for any missed mortgage payments.

3.7     On or about September 11, 2012, Jill Payne, E-mail Representative of the Special Loans Department of Defendant US BANCORP emailed [him] and advised him that the SCRA did apply to his mortgage on the subject property and should he become delinquent on his mortgage payments, the bank could not take action against him.

3.8     On or about September 16, 2012, [he] responded to Jill Payne's email seeking further confirmation that he was fully enrolled in the program ensuring his protection under the SCRA and advised Ms. Payne that Jordan Clark had previously assured him that US BANCORP, d/b/a US Bank, would fully exonerate him for any missed mortgage payments and asked Ms. Payne for confirmation this statement by Jordan Clark was indeed true.

3.9     On or about September 17, 2012, Jill Payne responded to [his] email and confirmed his accounts with US Bank were "set up in accordance with the Servicemembers Civil Relief Act through [his] September 1, 2014, payment." She went on to state, ". . . you will not accrue any late charges through this date and we will not report you to the credit bureaus through November 28, 2013." Ms. Payne further confirmed that "[d]uring [his] period of active duty and for nine months thereafter, [he would] not be in danger of foreclosure..." and advised him that "[a]s of today, neither loan is being reviewed for foreclosure, so ... [he was] not going to lose [his] home."

3.10    On or about November 27, 2012, Defendant US BANCORP, by and through Jessica Brazier, Special Loans Specials with US Bank's Special Loans Department, sent [him] a letter again confirming his protection under the SCRA based upon his active duty status in the US military.

3.11    Defendant US BANCORP employed Defendant SAFEGUARD PROPERTIES to winterize Plaintiff's Covington home and, upon

information and belief, hired Defendant SAFEGUARD PROPERTIES to perform this work less than one month after Plaintiff had received the written confirmation of November 27, 2012, that he was subject to SCRA protections.

3.12    Upon information and belief, when Defendant US BANCORP hired Defendant SAFEGUARD PROPERTIES to winterize Plaintiff's home, Defendant US BANCORP, by and through its duly authorized agents or employees, informed Defendant SAFEGUARD PROPERTIES that Plaintiff's mortgage was in default and that the subject residence was an asset of the bank and therefore needed winterization to preserve said asset.

3.13    Defendant SAFEGUARD PROPERTIES then hired Defendant QUEST PRESERVATION to perform said winterization.

3.14    Defendant QUEST PRESERVATION hired Bryan Anderson to complete the winterization of Plaintiff's home in Covington, Washington.

3.15    On or about December 28, 2012, Defendant QUEST PRESERVATION issued work order #115592 to Bryan Anderson to winterize the subject property.

3.16    On or about December 29, 2012, Bryan Anderson and his sister, Cheryl Anderson, entered Plaintiff's home.

3.17    On said occasion, Bryan Anderson replaced the front door locks with a new one so that Defendant SAFEGUARD PROPERTIES would have access to Plaintiff's home.

3.18    In the course of winterizing Plaintiff's home, Bryan and Cheryl Anderson unlawfully removed personal property belong to Plaintiff and also caused damage to the home itself.

3.19    Upon information and belief, over the course of four days, Bryan Anderson removed numerous items belonging to Plaintiff.

3.20    In the course of winterizing Plaintiff's home and removing Plaintiff's personal property from the residence, Bryan Anderson informed Plaintiff's neighbors that [his] mortgage was in default and was being repossessed by the bank.

3.21    Bryan Anderson then pawned and/or otherwise attempted to sell the personal property he stole from Plaintiff's residence.

3.22     On or about December 31, 2012, Jessica Brazier again sent a letter to Plaintiff advising him that the bank was issuing him a refund of a late fee due to his protection under the SCRA.

3.23     On or about January 4, 2013, Bryan Anderson opened a bank account with Defendant US BANCORP, via a US Bank branch, with a check he obtained from selling Plaintiff's personal property.

3.24     On or about February 24, 2013, Plaintiff [], having been granted a one-week leave from him deployment in Korea, arrived at the Covington home and discovered his key no longer worked to unlock the front door. Unable to get into his home, Plaintiff called 911, who advised him to contact his bank.

3.25     Plaintiff [] contacted Defendant US BANCORP the next day, February 25, 2013, and notified said Defendant, by and through its duly authorized employee(s) and/or agent(s) of the violation of Defendant US BANCORP'S prior guarantees that he was protected by the SCRA and also providing notice to said Defendant that many personal items had been stolen from his residence.

3.26     Upon information and belief, his file and his corresponding claim for damages was transferred to Defendant US BANCORP'S Loss Draft Processing Center, a division of US Bank.

3.27     On or about February 28, 2013 and again on or about March 1, 2013, Plaintiff received emails from Defendant US BANCORP'S Loss Draft Processing Center, confirming receipt of his claim and advising Plaintiff it was currently being reviewed.

3.28     On or about March 2 or 3, 2013, Gregg Speer, Sr., Vice President of Residential Homes Default Counseling, a division of Defendant US BANCORP, called Plaintiff and promised him that the bank "would make this right" and further promised immediate financial assistance to Plaintiff to offset the costs and losses Plaintiff had suffered as a result of the wrongful pre-foreclosure actions taken by Defendant US BANCORP.

3.29     After having admitted the pre-foreclosure actions previously taken by Defendant US BANCORP were wrongful and should not have occurred, Defendant US BANCORP, by and through US Bank's Residential Mortgage Default and Management Division, sent Plaintiff another Pre-Foreclosure Notice on or about June 19, 2013.

3.30     Around the time Defendant US BANCORP sent Plaintiff the Pie-Foreclosure Notice in June of 2013, Plaintiff's neighbors contacted him to let

him know that another home preservation company had been seen on Plaintiff's property.

Dkt. #4, *Complaint* at ¶ ¶ 3.2-3.30.

As a result, Plaintiff has brought claims against Defendant U.S. Bank for Violation of the Consumer Protection Act and Fraud, and against all Defendants for Violation of the Servicemembers Civil Relief Act, Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and Vicarious Liability. *Id.* at ¶ ¶ 4.1-10.9.

Discovery proceeded in this matter, and trial was initially set for May 30, 2017. Dkt. #11. Prior to the discovery deadline of February 1, 2017, Defendants filed a motion to compel responses to written discovery and the deposition of Plaintiff. Dkt. #16. That motion was noted for consideration on January 20, 2017. *Id.* Plaintiff followed with a motion for a stay of this matter pursuant to the SCRA, seeking a stay until May of 2018. Dkt. #24.

On February 14, 2017, the Court entered an Order striking Defendant's motion to compel and entering a stay. Dkt. #28. In so ruling, the Court noted that it agreed with Defendant there were ambiguities with the information provided, and particularly with the letter from Plaintiff's commanding office. Dkt. #28 at 7. However, the Court ultimately found that Plaintiff had satisfied the requirements of the Act and granted a limited stay to August 18, 2017. *Id.* at 8.

Just two days before the August stay expired, Plaintiff filed the instant motion for stay. Dkt. #32. Notably, at the time of filing, the motion was not supported by a Declaration from Plaintiff himself, nor was there attached any letter from his commanding officer. *See id.* Instead, Plaintiff's counsel stated that the motion was being filed without those supporting documents "to avoid having the Court waste its time by entering a new scheduling order, and to avoid having the parties waste their time by proceeding to actively litigate this case." Dkt. #32 at 3, fn. 1. Plaintiff's counsel also asserted that Plaintiff was in the process of securing a letter from his

commanding officer. Dkt. #33 at ¶5. On August 25, 2017, Plaintiff's counsel then filed a "Supplement" to the motion, which contained the Declaration of Plaintiff with Exhibits, including a letter from his commanding officer. Dkt. #34. Defendant U.S. Bank opposes the motion. The matter is now ripe for review.

### III. DISCUSSION

As this Court explained in its prior Order staying this case, the purpose of the SCRA "is to suspend enforcement of civil liabilities of persons in military service of the United States in order to enable such persons to devote their entire energy to the defense of the Nation." *Engstrom v. First National Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The public policy behind the Act "is to allow military personnel to fulfill their duties unhampered by obligations incurred prior to their call." *Omega Industries, Inc. v. Raffaele*, 894 F. Supp. 1425, 1434 (D. Nev. 1995). Further, the provisions of the Act are to be "liberally construed" and applied in a "broad spirit of gratitude towards service personnel." *Engstrom*, 47 F.3d at 1462; *Omega Industries, Inc.*, 894 F. Supp. at 1434 (citations omitted). As a result, the Court "must exercise extreme caution in withholding the protection" of the Act. *Omega Industries, Inc.*, 894 F. Supp. at 1434. Nevertheless, the Act "is not to be used as a sword against persons with legitimate claims," and the Court must give "equitable consideration of the rights of parties to the end that their respective interests may be properly conserved." *Engstrom*, 47 F.3d at 1462.

Section 522 of the SCRA "applies to any civil action in which the plaintiff or defendant at the time of filing" a request for a stay under that section: "(1) is in military service or is within 90 days after termination of or release from military service; and (2) has received notice of the action or proceeding." 50 App. U.S.C.A. § 522(a). These requirements have been met here.

A stay may be obtained "[a]t any stage before final judgment in a civil action or proceeding" either "upon application of the servicemember" or by the Court "on its own motion . . . for a period of not less than 90 days." 50 App. U.S.C.A. § 522(b)(1). In order to obtain a stay, the application must include:

> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear.
>
> (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

50 pp. U.S.C.A. § 525(b).[1]

In support if his current motion, Plaintiff has submitted a letter dated August 23, 2017, from his commanding officer which states that Plaintiff's current military assignment "prevents his appearance in the Continental United States for trial"; Plaintiff "does not have enough accrued Leave days to sustain prolonged participation in these upcoming proceedings for a timeframe of 30 days or more"; and Plaintiff will separate from the Air Force in three years and after that he will have more flexibility and availability. Dkt. #34, Ex. 3.[2]

---

[1] "Where the servicemember fails to satisfy the conditions . . . a stay is 'not mandatory,' but the Court retains 'discretion to grant or deny the stay depending on the circumstances presented.'" *Ovieda v. Sodexo Operations, LLC*, 2012 U.S. Dist. LEXIS 197097, *5 (C.D. Cal. Nov. 7, 2012); *see also In re Marriage of Herridge*, 169 Wn. App. 290, 292, 279 P.3d 956, 957 (Div. I, July 2, 2012) ("[I]n order to be entitled to such a stay, the servicemember must present to the court certain statutorily specified information regarding his or her military duty. Where the servicemember fails to do so, the SCRA does not entitle the servicemember to this relief. Although the court may issue a stay of proceedings on its own motion, such a stay is discretionary.").

[2] In violation of this Court's Local Rules, this letter was submitted through an untimely Declaration filed without leave of the Court. *See* LCR 7(d). In addition, he has submitted a second copy of his orders stationing him in Germany, and his specific position appointment letter

ORDER
PAGE - 7

The Court agrees with Defendant that there are deficiencies with the letter from Plaintiff's commanding officer. In contravention to the SCRA, the letter does not state that military leave is not authorized for Plaintiff at the time of the letter. *See* Dkt. #34, Ex. 3. Moreover, both Plaintiff and his commanding officer continue to frame his potential leave in a "30 day time period," which is nonsensical given that there is no trial date currently scheduled, the parties last informed the Court that any trial was expected to last 6-8 days, and any deposition is limited to seven hours by the Federal Rules of Civil Procedure. However, once again in an abundance of caution, the Court finds that Plaintiff has satisfied the requirements of the SCRA and will grant a stay, albeit for a shorter duration than requested as noted below.[3]

## IV.  CONCLUSION

Having reviewed Plaintiff's motion, the opposition thereto and reply in support thereof, along with the Declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Motion for Stay (Dkt. #32) is GRANTED IN PART. This litigation is STAYED until **November 10, 2017**. If, by that date, an application for additional stay is filed by Plaintiff under 50 App. U.S.C. § 522(d)(1), that application shall again contain the information required under 50 App. U.S.C. § 522(b)(2), including a letter or other communication from Plaintiff's commanding officer. **Further, Plaintiff is**

---

which states that he needs to be prepared for a potential deployment at any time. Dkt. #34, Exs. 1 and 2.

[3] As the Court noted previously, to prevent prejudice against an absent party, courts may grant a stay even where a servicemember does not fully satisfy both conditions enumerated in section (b)(2) of the SCRA. *See, e.g., Keane v. McMullen*, 2009 U.S. Dist. LEXIS 10389, 2009 WL 331455, *3 (N.D. Cal. Feb. 11, 2009) (granting a stay where a servicemember did not produce a letter from his commanding officer regarding his leave status because the court was sufficiently convinced that a stay was necessary to avoid undue prejudice).

ORDER
PAGE - 8

1. **warned that if he fails to comply with the filing requirements set forth in this Court's Local Civil Rule 7, and fails to comply with the requirements of the SCRA in their entirety, the Court will deny such a motion.[4] Plaintiff has more than 60 days to comply with his statutory requirements and the Court expects that both he and his counsel will prepare for any future motion with the professional attention it deserves.**

2. The Clerk will issue an Amended Scheduling Order once the stay is lifted in this matter. Further, once the stay is lifted, only those case deadlines that had not passed as of the date of the Court's initial stay Order (2/14/2017) will be re-scheduled. With the exception of the discovery at issue in Defendant's prior motion to compel (Dkt #16), no further discovery shall be taken once the stay is lifted unless otherwise ordered by the Court.

3. As noted in the Court's prior stay Order, nothing precludes Defendant from filing a subsequent motion to compel once the stay is lifted should that become necessary.

DATED this 7th day of September, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] The Court also notes that Plaintiff has informed the Court of "his tentative plans" to request leave to travel to the United States in February of 2018, and that if he is granted such leave he will arrange to have his deposition taken during that time. Dkt. #38. Any future motions made by Plaintiff pertaining to the case schedule in this matter shall inform the Court whether he indeed requested leave and whether that request was granted or denied.

ORDER
PAGE - 9