UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN H. SANTOS, ) CASE NO. C16-0434 RSM
)
Plaintiff, )
)  ORDER GRANTING DEFENDANT U.S.
v. ) BANK NATIONAL'S MOTION TO
) COMPEL
U.S. BANK NATIONAL ASSOCIATION, )
*et al.*, )
)
Defendants. )
)

## I. INTRODUCTION

This matter comes before the Court on Defendant U.S. Bank National Association's ("U.S. Bank") Second Motion to Compel Discovery. Dkt. #43. Plaintiff opposes the motion, arguing that in large part it is unnecessary. Dkt. #47. The Court has reviewed the motion, along with the remainder of the record. For the reasons set forth herein, the Court now GRANTS Defendant's motion to compel.

## II. BACKGROUND

Plaintiff, Brian Santos, initially filed his Complaint for Damages in King County Superior Court. Dkt. #4. Defendants removed the action to this Court on March 25, 2016. Dkt. #1. Plaintiff alleges that:

> 3.2   At all times material and relevant hereto, Plaintiff BRIAN H. SANTOS was an active duty member of the United States Air Force.

ORDER
PAGE - 1

3.3     At all times material and relevant hereto, Plaintiff's then-wife was also an active duty member of the United States Air Force.

3.4     Defendant US BANK, doing business as US Bank and US Bank Home Mortgage, holds the mortgage to Plaintiff's home located at 19007 SE 2601h Street in Covington, King County, Washington.

3.5     On or about September 1, 2012, Plaintiff BRIAN H. SANTOS spoke with Jordan Clark of Defendant US BANK regarding his active duty status to ensure his home would be protected while he was deployed.

3.6     On said occasion, Jordan Clark assured Plaintiff that he was protected under the Servicemembers Civil Relief Act (SCRA) and no negative action would be taken against him by the bank for any missed mortgage payments.

3.7     On or about September 11, 2012, Jill Payne, E-mail Representative of the Special Loans Department of Defendant US BANK emailed Plaintiff and advised him that the SCRA did apply to his mortgage on the subject property and should he become delinquent on his mortgage payments, the bank could not take action against him.

3.8     On or about September 16, 2012, Plaintiff BRIAN H. SANTOS responded to Jill Payne's email seeking further confirmation that he was fully enrolled in the program ensuring his protection under the SCRA and advised Ms. Payne that Jordan Clark had previously assured him that US BANK, would fully exonerate him for any missed mortgage payments and asked Ms. Payne for confirmation this statement by Jordan Clark was indeed true.

3.9     On or about September 17, 2012, Jill Payne responded to Plaintiff's email and confirmed his accounts with US Bank were "set up in accordance with the Servicemembers Civil Relief Act through [his] September 1, 2014, payment." She went on to state, ". . . you will not accrue any late charges through this date and we will not report you to the credit bureaus through November 28, 2013." Ms. Payne further confirmed that "[d]uring [Plaintiff's] period of active duty and for nine months thereafter, [he would] not be in danger of foreclosure . . . " and advised him that "[a]s of today, neither loan is being reviewed for foreclosure, so . . . [he was] not going to lose [his] home."

3.10    On or about November 27, 2012, Defendant US BANK, by and through Jessica Brazier, Special Loans Specialist with US Bank's Special Loans Department, sent Plaintiff BRIAN H. SANTOS a letter again confirming his protection under the SCRA based upon his active duty status in the US military.

ORDER
PAGE - 2

3.11     Defendant US BANK employed Defendant SAFEGUARD PROPERTIES to winterize Plaintiff's Covington home and, upon information and belief, hired Defendant SAFEGUARD PROPERTIES to perform this work less than one month after Plaintiff had received the written confirmation of November 27, 2012, that he was subject to SCRA protections.

3.12     Upon information and belief, when Defendant US BANK hired Defendant SAFEGUARD PROPERTIES to winterize Plaintiff's home, Defendant US BANK, by and through its duly authorized agents or employees, informed Defendant SAFEGUARD PROPERTIES that Plaintiff's mortgage was in default and that the subject residence was an asset of the bank and therefore needed winterization to preserve said asset.

3.13     Defendant SAFEGUARD PROPERTIES then hired Defendant QUEST PRESERVATION to perform said winterization.

3.14     Defendant QUEST PRESERVATION hired Bryan Anderson to complete the winterization of Plaintiff's home in Covington, Washington.

3.15     On or about December 28, 2012, Defendant QUEST PRESERVATION issued work order #115592 to Bryan Anderson to winterize the subject property.

3.16     On or about December 29, 2012, Bryan Anderson and his sister, Cheryl Anderson, entered Plaintiff's home.

3.17     On said occasion, Bryan Anderson replaced the front door locks with a new one so that Defendant SAFEGUARD PROPERTIES would have access to Plaintiff's home.

3.18     In the course of winterizing Plaintiffs home, Bryan and Cheryl Anderson unlawfully removed personal property belong to Plaintiff and also caused damage to the home itself.

3.19     Upon information and belief, over the course of four days, Bryan Anderson removed numerous items belonging to Plaintiff.

3.20     In the course of winterizing Plaintiff's home and removing Plaintiff's personal property from the residence, Bryan Anderson informed Plaintiff's neighbors that Plaintiff's mortgage was in default and was being repossessed by the bank.

3.21     Bryan Anderson then pawned and/or otherwise attempted to sell the personal property he stole from Plaintiff's residence.

3.22 On or about December 31, 2012, Jessica Brazier again sent a letter to Plaintiff advising him that the bank was issuing him a refund of a late fee due to his protection under the SCRA.

3.23 On or about January 4, 2013, Bryan Anderson opened a bank account with Defendant US BANK, via a US Bank branch located in Washington State, with a check he obtained from selling Plaintiff's personal property.

3.24 On or about February 24, 2013, Plaintiff BRIAN H. SANTOS, having been granted a one-week leave from him deployment in Korea, arrived at the Covington home and discovered his key no longer worked to unlock the front door. Unable to get into his home, Plaintiff called 911, who advised him to contact his bank.

3.25 Plaintiff BRIAN H. SANTOS contacted Defendant US BANK the next day, February 25, 2013, and notified said Defendant, by and through its duly authorized employee(s) and/or agent(s) of the violation of Defendant US BANK'S prior guarantees that he was protected by the SCRA and also providing notice to said Defendant that many personal items had been stolen from his residence.

3.26 Upon information and belief, his file and his corresponding claim for damages was transferred to Defendant US BANK'S Loss Draft Processing Center, a division of US Bank.

3.27 On or about February 28, 2013 and again on or about March 1, 2013, Plaintiff received emails from Defendant US BANK'S Loss Draft Processing Center, confirming receipt of his claim and advising Plaintiff it was currently being reviewed.

3.28 On or about March 2 or 3, 2013, Gregg Speer, Sr., Vice President of Residential Homes Default Counseling, a division of Defendant US BANK, called Plaintiff and promised him that the bank "would make this right" and further promised immediate financial assistance to Plaintiff to offset the costs and losses Plaintiff had suffered as a result of the wrongful pre-foreclosure actions taken by Defendant US BANK.

3.29 After having admitted the pre-foreclosure actions previously taken by Defendant US BANK were wrongful and should not have occurred, Defendant US BANK, by and through US Bank's Residential Mortgage Default and Management Division, sent Plaintiff another Pre-Foreclosure Notice on or about June 19, 2013.

3.30 Around the time Defendant US BANK sent Plaintiff the Pre-Foreclosure Notice in June of 2013, Plaintiff's neighbors contacted him to let

him know that another home preservation company had been seen on Plaintiffs property.

Dkt. #2 at ¶ ¶ 3.2-3.30.

As a result, Plaintiff brought claims against Defendant U.S. Bank for Violation of the Consumer Protection Act and Fraud, and against all Defendants for Violation of the Servicemembers Civil Relief Act, Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress, and Vicarious Liability. *Id.* at ¶ ¶ 4.1-10.9.

Prior to the discovery deadline of February 1, 2017, Defendants filed a motion to compel responses to written discovery and the deposition of Plaintiff. Dkt. #16. That motion was noted for consideration by the Court on January 20, 2017. *Id.* Plaintiff then filed a motion for a stay of this matter pursuant to the Servicemembers Civil Relief Act ("SCRA"), and sought a stay until May of 2018. Dkt. #24.

On February 14, 2017, the Court granted Plaintiff's motion in part and stayed these proceedings until August 18, 2017. Dkt. #28. The Court also struck Defendant's motion to compel, subject to renewal once the matter proceeded. *Id.*

On August 16, 2017, Plaintiff moved for another stay. Dkt. #32. Although the Court found there were deficiencies with the motion, in abundance of caution, the Court granted a stay. Dkt. #39. However, the Court stayed the matter only until November 10, 2017. *Id.* The Court also informed the parties that:

> . . . If, by that date, an application for additional stay is filed by Plaintiff under 50 App. U.S.C. § 522(d)(1), that application shall again contain the information required under 50 App. U.S.C. § 522(b)(2), including a letter or other communication from Plaintiff's commanding officer. **Further, Plaintiff is warned that if he fails to comply with the filing requirements set forth in this Court's Local Civil Rule 7, and fails to comply with the requirements of the SCRA in their entirety, the Court will deny such a motion. Plaintiff has more than 60 days to comply with his statutory requirements and the Court expects that**

ORDER
PAGE - 5

> **both he and his counsel will prepare for any future motion with the professional attention it deserves.**
>
> 2. The Clerk will issue an Amended Scheduling Order once the stay is lifted in this matter. Further, once the stay is lifted, only those case deadlines that had not passed as of the date of the Court's initial stay Order (2/14/2017) will be re-scheduled. With the exception of the discovery at issue in Defendant's prior motion to compel (Dkt #16), no further discovery shall be taken once the stay is lifted unless otherwise ordered by the Court.
>
> 3. As noted in the Court's prior stay Order, nothing precludes Defendant from filing a subsequent motion to compel once the stay is lifted should that become necessary.

Dkt. #39 at 8-9 (bold in original; footnote omitted).

No further motions for stay have been filed. Accordingly, the stay has expired, and Defendant's renewed motion to compel is ripe for review.

### III. DISCUSSION

#### A. Stay Has Expired

As an initial matter, the Court formally lifts the stay in this matter. The stay expired on November 10, 2017, and Plaintiff has filed no further motion to stay this matter. *See* Dkt. #39 at 8. Accordingly, this matter will now proceed and the Court will issue an Amended Scheduling Order setting forth the remaining pre-trial deadlines.

#### B. Standard for Motions to Compel

A party may move to compel discovery if the movant has in good faith conferred with the party opposing discovery to obtain the requested discovery without the court's intervention. *See* Fed. R. Civ. P. 37(a)(1). The moving party bears the burden of demonstrating that the information it seeks is relevant and that the responding party's objections lack merit. *See Bluestone Innovations LLC v. LG Elecs., Inc.*, No. C-13-01770-SI (EDL), 2013 U.S. Dist. LEXIS 171861, 2013 WL 6354419, at *2 (N.D. Cal. Dec. 5, 2013). The party must therefore "inform

ORDER
PAGE - 6

the Court which discovery requests are the subject of the motion to compel, and, for each disputed response, why the information sought is relevant and why the responding party's objections are not meritorious." *Adams v. Yates*, No. 1:10-cv-0671-AWI-MJS, 2013 U.S. Dist. LEXIS 157111, 2013 WL 5924983, at *1 (E.D. Cal. Nov. 1, 2013).

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Whether discovery is proportional to the needs of the case hinges on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* The court must limit discovery that is not proportional to the needs of the case. *See Fox v. State Farm Ins. Co.*, No. C15-0535RAJ, 2016 U.S. Dist. LEXIS 9056, 2016 WL 304784, at *1 (W.D. Wash. Jan. 26, 2016). The court has "broad discretion to limit" such discovery. *Romero v. Securus Techs., Inc.*, No. 16-cv-1283-JM-MDD, 2017 U.S. Dist. LEXIS 170976, 2017 WL 4621223, at *1 (S.D. Cal. Oct. 16, 2017).

**C. Discovery Sought**

Defendant U.S. Bank asks the Court to issue an Order: (1) compelling Plaintiff to make himself available for a deposition in this District within 60 days; (2) compelling Plaintiff to immediately provide full and complete answers to the Bank's interrogatories and requests for production; and (3) awarding the Bank its reasonable fees and costs for bringing this Motion and its prior motion to compel. Dkt. #43 at 2. The Court will grant this motion in part.

On September 16, 2016, Defendant served Plaintiff with Discovery Requests. Dkt. #17, Ex. A. Thus, Plaintiff's deadline to serve his responses was October 17, 2016. Fed. R. Civ. Proc.

ORDER
PAGE - 7

33(b)(2) and 34(b)(2)(A). Plaintiff did not respond by that date, nor did he contact Defendant to seek and extension of time to respond. Dkt. #17 at ¶ 4. After that date, defense counsel engaged in discussions with Plaintiff's counsel, and ultimately agreed to an extension of time to respond until November 14, 2016, provided that such responses would be without objections and also informally include other information. Dkt. #17 at ¶ 10 and Ex. F thereto. Plaintiff provided discovery responses on November 14, 2016, but those responses did not comply with counsel's agreement. Dkt. #17 at ¶¶ 12-13. After additional meet and confers between counsel, Plaintiff provided additional responses; however, the supplemental responses still did not cure the deficiencies identified by defense counsel. Dkt. #17 at ¶¶ 16 - 21 and Exs. L, M, N, O, P, Q, R, T and U thereto. Additionally, Plaintiff failed to provide any dates that he would be available for his deposition. Dkt. #17 at ¶ 22. Since the filing of Defendant's first motion to compel, which was stricken during the stay, Plaintiff has failed to provide additional discovery responses, and provided deposition dates only after the instant motion was filed. Dkt. #44 at ¶¶ 3-13 and #45 at 2.

As an initial matter, "[i]t is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir 1992) (quoting *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981). Having reviewed the record in this matter, the Court finds that Plaintiff did not respond to discovery requests in a timely manner and did not comply with subsequent agreements between counsel for the production of discovery. Therefore, any objections have been waived. As a result, Plaintiff's arguments that the discovery sought by Defendant is not relevant are without basis. *See* Dkt. #47 at 4-7. Moreover, Plaintiff fails to address the standard set forth in the current Federal Civil Rule regarding discovery requests, and

ORDER
PAGE - 8

does not address Defendant's assertions that the requested discovery is relevant to its defenses. *See id*. and Fed. R. Civ. Proc. 26(b)(1). Accordingly, the Court will grant Defendant's request for an order compelling Plaintiff to withdraw any objections and provide full and complete, verified responses to Defendant's interrogatories and requests for production.

Turning to Defendant's request that Plaintiff provide a date certain for his deposition, the Court will also grant that request. Plaintiff argues that such an Order is not necessary because he has informed defense counsel that he is available on any day between February 19 and 21, 2018. Dkts. #45 at 2 and #47 at 2-3. However, the Court notes that Plaintiff does not assert that he has been granted leave during that time. In fact, he qualifies those dates with the statement that he is available "unless my command withdraws permission, <u>does not grant</u>, or revokes my requested leave." Dkt. #45 at 2 (emphasis added). This statement also fails to comply with the spirit of the Court's prior Order, wherein the Court informed Plaintiff that he "shall inform the Court whether he indeed requested leave and whether that request was granted or denied." *See* Dkt. #39 at 9. The Court will take Plaintiff at his word that he is available on the dates he has provided; however, the Court finds an Order directing Plaintiff to appear for his deposition on those dates is also in order. Plaintiff is warned that once a subpoena is issued, his failure to appear on the noticed date may subject him to sanctions, unless he has received prior permission not to appear from defense counsel or this Court.

Finally, the Court will grant Defendant's request for attorney's fees. Federal Rule of Civil Procedure 37(a)(5)(A) requires the Court to grant the moving party's expenses in making the motion if the motion is granted. The Court finds no reason not to grant Defendant's request given the history of this matter. Accordingly, the Court shall award Defendant its attorney's fees related to its motion to compel.

## IV. CONCLUSION

Having reviewed Defendant's motion, the opposition thereto and reply in support thereof, along with the parties' Declarations and exhibits and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendant's Motion to Compel (Dkt. #43) is GRANTED.

2. No later than twenty (20) days from the date of this Order, Plaintiff shall withdraw his objections to Defendant's discovery requests and produce full and complete, verified responses to those requests. Should Plaintiff fail to comply with this Order, he may be subject to sanctions. Further, nothing in this Order precludes Defendant from moving for additional discovery should it believe such discovery is warranted after receiving Plaintiff's responses.

3. Defendant shall issue a deposition subpoena to Plaintiff for one of the dates he has provided (February 19-21, 2018), and Plaintiff shall appear for his deposition on that date unless otherwise excused by Defendant or this Court.

4. Defendant's request for attorney's fees and costs is GRANTED. Defendant shall file a Supplemental Motion for Attorney's Fees, supported with a Declaration of its fees associated with its Motions to Compel (both the first and the second) **no later than fourteen (14) days from the date of this Order.** That motion shall be noted for the second Friday after it is filed. Plaintiff may file a Response no later than the Monday before the noting date, addressing only the reasonableness of the fees requested. No Reply shall be filed.

5. The Clerk SHALL issue an Amended Scheduling Order. The only remaining pre-trial deadlines include those for: dispositive motions, 39.1 mediation, Motions in

Limine, the Pretrial Order, trial briefs and Proposed Findings of Fact and Conclusions of Law.

DATED this 20th day of December 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE